David R. Welch, Esq. (SBN 251693)
Kelley Bond, Esq. (SBN 230842)
Marius Jungk, Esq. (SBN 354195)
**ENSO LAW, L.L.P.**
600 Wilshire Blvd., Suite 890.
Los Angeles, CA 90017
Tel: (213) 314-0028
Email: litigation@enso.law

*Attorneys for Plaintiff THE HOLDING COMPANY LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| THE HOLDING COMPANY LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BAY SMOKES LLC, a Florida limited liability company; WILLIAM JAMES GOODALL, an individual; KATIANA KAY, an individual; GOOD GLOBAL LLC, a Delaware limited liability company and DOES 1 through 10, inclusive,<br><br>Defendants. | Case Number:<br><br>**COMPLAINT FOR:**<br><br>**(1)  TRADEMARK INFRINGEMENT – LIL BABY (15 U.S.C. §1114)**<br>**(2)  TRADEMARK INFRINGEMENT – WHAM! (15 U.S.C. §1114)**<br>**(3)  TRADEMARK INFRINGEMENT – SAVAGE PATCH! (15 U.S.C. §1114)**<br>**(4)  TRADEMARK INFRINGEMENT – GOON BERRIES! (15 U.S.C. §1114)**<br>**(5)  FALSE DESIGNATION OF ORIGIN AND FALSE ENDORSEMENT (15 U.S.C. 1125(a)**<br>**(6)  TRADEMARK DILUTION BY TARNISHMENT (15 U.S.C. §1125(c)**<br>**(7)  BREACH OF CONTRACT**<br>**(8)  UNFAIR COMPETITION (Cal. Bus. & Prof. Code §17200)**<br>**(9)  FALSE ADVERTISING (Cal. Bus. &Prof. Code §17500)** |

1

**COMPLAINT**

**(10)   ACCOUNTING**
**(11)   INJUNCTIVE RELIEF**
**(12)   NEGLIGENCE PER SE**

**DEMAND FOR JURY TRIAL**

**COMPLAINT**

Plaintiff The Holding Company LLC ("**Plaintiff**"), by and through its undersigned counsel, hereby brings this action against Defendants Bay Smokes LLC ("**Bay Smokes**"), a Florida limited liability company, Good Global LLC ("**Good Global**"), a Delaware limited liability Company, William James Goodall ("**Goodall**"), an individual, and an individual commonly known as Katiana Kay ("**Katiana**"), (collectively the "**Defendants**"). Plaintiff alleges, based upon personal knowledge as to its own acts and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1.      This action arises under the Lanham Act, 15 U.S.C. §§1114, 1125(a), and 1125(c).

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1121 because this action presents federal questions arising under the trademark laws of the United States.

3.      This Court also has jurisdiction pursuant to 28 U.S.C. §1338(a) because this action arises under federal laws governing trademarks and unfair competition.

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because those claims arise from the same nucleus of operative facts.

5.      This Court has personal jurisdiction over Defendants because Defendants have purposefully directed commercial activities toward the State of California and have caused harm to Plaintiff within this Central District of California.

6.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

7. Plaintiff The Holding Company LLC is a California limited liability company with its principal place of business located at 633 W. 5th St., Los Angeles, CA 90071.

8. Defendant Bay Smokes LLC (hereinafter "Bay Smokes") is a Florida limited liability company with its principal place of business in Miami, Florida.

9. Defendant Good Global LLC (herein after "Good Global") is a Delaware limited liability company with its principal place of business in Miami, Florida. Good Global is the manager of Bay Smokes.

10. Defendant William James Goodall ("Goodall") is the co-founder, an owner, and principal of Bay Smokes LLC. Mr. Goodall exercised control over the marketing, branding, and commercial activities of Bay Smokes and personally directed the conduct described herein. Goodall is the Chief Executive Officer of Bay Smokes and in a position of management and control over Good Global, LLC.

11. Defendant Katiana Kay ("Kay") a co-founder, an owner, and principal of Bay Smokes LLC. In her role as owner of Bay Smokes LLC, Kay exercised control over the marketing, branding, and commercial activities of Bay Smokes and personally directed the conduct described herein. Kay is also an adult film actress and generates revenue from the distribution of her erotic content where she also promotes Bay Smokes with Goodall. Plaintiffs are of the information and belief that Katiana Kay is a stage name. Plaintiff is currently unaware of Kay's legal name but will amend the complaint when Plaintiff is made aware of Kay's legal name.

12. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, or otherwise of Defendants named herein as DOES 1 through 10, inclusive, and Plaintiff therefore sues these Defendants by their fictitious names. Plaintiff will amend this complaint to state the true names and capacities of each fictitiously named defendant when ascertained. Plaintiff is informed and believes,

4

**COMPLAINT**

and on that basis alleges, that each of the DOE Defendants is responsible in some manner for the wrongful conduct, trademark infringement, false designation of origin, unfair competition, and other acts alleged herein.

13.　Plaintiff is informed and believes, and on that basis alleges, that at all times material hereto, each Defendant was the agent, servant, employee, partner, joint venturer, alter ego, co-conspirator, and/or aider and abettor of each of the other Defendants, and in doing the things alleged herein was acting within the course and scope of such relationship and with the knowledge, consent, authorization, ratification, or approval of the other Defendants.

## **INTRODUCTION**

14.　This action arises from Defendants' misuse of intellectual property associated with Plaintiff's trademarks related consumer brands and Plaintiff's rights to monetize the likeness of well-known recording artist and public figure professionally known as Lil Baby.

15.　Over a period of years, Plaintiff developed and commercialized intellectual property associated with Dominique Jones, also known as Lil Baby. Plaintiff has developed a portfolio of trademarks, brand identifiers, and marketing assets used to promote a lifestyle brand with substantial consumer recognition, particularly among younger consumers and within the music, and lifestyle product markets. To this end, Plaintiff registered its intellectual properties with both the United States Copyright Office and United States Trademark and Patent Office.

16.　The WHAM mark began as a childhood nickname for Lil Baby. More recently WHAM has been associated with Lil Baby's commercially successful music album which goes by the same name.

**COMPLAINT**

17.    WHAM is an acronym for "Who Hard as Me," which reflects Lil Baby's personal and professional trajectory from his upbringing in Southwest Atlanta to achieving sustained commercial success in the music industry.

18.    The WHAM brand is widely recognized by consumers as identifying Lil Baby's music, persona, and associated commercial ventures, and is a key component of the goodwill embodied in Plaintiff's intellectual property.

19.    Plaintiff also owns and controls valuable trademarks, brand identifiers, marketing assets, and other intellectual property which Defendants have also infringed or tarnished, including but not limited to WHAM!, SAVAGE PATCH!, and GOON BERRIES! (collectively the "Marks").

20.    Plaintiff also owns and controls valuable copyrighted works which Defendants have also infringed, including but not limited to WHAM! (United States Copyright Registration No. VA 2-350-456), SAVAGE PATCH! (United States Copyright Registration No. VA 2-350-438), and GOON BERRIES! (United States Copyright Registration No. VA 2-350-434) (collectively, the "Copyrights").

21.    As commercial success and recognition of the WHAM and related Marks and Copyrights increased, Defendants sought to enter into a business relationship with Plaintiff to capitalize Plaintiff's intellectual property.

22.    In or about October 2024, Plaintiff and Defendant Bay Smokes, LLC entered into a Marketing Joint Venture Agreement (the "Agreement").

23.    Under the Agreement, Defendants were granted only a limited and conditional license to use the Marks and Copyrights to market specified hemp-derived products that complied with applicable state and federal law, including the federal definition of hemp under 7 U.S.C. § 16390(1).

24.    The Agreement imposed clear and binding obligations on Defendants, including requirements to comply with applicable law, obtain Plaintiff's prior

approval before marketing products bearing the Marks and Copyrights, maintain appropriate quality-control standards, accurately report sales involving the Marks, and pay all amounts owed to Plaintiff under the Agreement.

25.    As commercial success and recognition of Plaintiff's intellectual property increased, Defendants unlawfully capitalized on the goodwill associated with Plaintiff's Marks and Copyrights by creating unauthorized products and promotional content designed to imitate and exploit the WHAM identity.

26.    Defendants knowingly exceeded the scope of the limited license granted under the Agreement by marketing and selling illegal cannabis products that fell outside the lawful definition of hemp and outside the scope of the parties' contractual relationship.

27.    Defendants also engaged in a broader course of misconduct by concealing sales involving products bearing the Marks and Copyrights, failing to report revenues generated from those sales, failing to pay contractual amounts owed to Plaintiff, and failing to maintain the quality-control standards required by the Agreement.

28.    In furtherance of this misconduct, Defendants marketed and promoted products bearing Plaintiff's Marks and Copyrights and Lil Baby's name and likeness without authorization, thereby creating the false and misleading impression that such products were affiliated with, endorsed by, or approved by Plaintiff and Lil Baby.

29.    Defendants have also repeatedly represented to consumers, distributors, and online audiences that Bay Smokes are partners in and control or manage the Marks and Copyrights and related brands associated with Lil Baby, despite knowing that those statements are false.

**COMPLAINT**

30.   These false claims of ownership or management and control over the Marks and Copyrights diverted sales, misappropriate brand goodwill, and diluted and tarnished the commercial value of Plaintiff's Marks and Lil Baby's likeness.

31.   Defendants Goodall and Katrina further associated the Bay Smokes brand with explicit erotic content which they distributed through social media and other online platforms. The publication of this erotic content promoting Bay Smokes was done contemporaneously with Goodall claiming that Bay Smokes maintained management and control of Plaintiff's Marks and Copyright, thereby creating the false impression that Plaintiff's brands are affiliated with the erotic videos produced and promoted by Bay Smokes.

32.   This direct association of Bay Smokes with Goodall's and Kay's erotic videos and Goodall's claims to be a partner or having management and control over WHAM and Marks undermines the goodwill of Plaintiffs Marks and moreover harms the value in Lil' Baby's reputation, as Goodall claims to be Lil' Baby's partner.

33.   By exceeding the scope of the license, falsely claiming ownership of Plaintiff's Marks, promoting unauthorized products using Lil Baby's identity, and associating Plaintiff's brands with explicit erotic content, Defendants have caused substantial reputational harm and severely damaged the goodwill associated with Plaintiff's Marks.

34.   Defendants' conduct has created a substantial likelihood of consumer confusion and has caused significant harm to the reputation, goodwill, and commercial value associated with Plaintiff's Marks.

35.   On February 13, 2025, through its counsel, Plaintiff sent a letter of cease-and-desist to Defendants. This letter informed the Defendants of their unauthorized and ongoing infringing use and demanded an immediate stop to such

infringing use. The letter also informed Defendants of Plaintiffs investigation and that Defendants were unlawfully selling cannabis nationwide and into the state of California on packaging bearing Plaintiffs Marks and Copyrights. On March 5, 2026, an attorney purporting to represent Defendants requested additional time to respond to Plaintiff's letter. Defendants' counsel has not responded since.

36.     Instead of complying with the cease-and-desist request, Defendants ramped up their infringing activities. Defendants continued to sell cannabis products using Plaintiff's Trademarks and Copyrighted material in addition began asserting ownership of the Plaintiff's intellectual property.

37.     Plaintiff therefore brings this action to protect its intellectual property rights, halt Defendants' unlawful conduct, recover damages resulting from Defendants' actions, and obtain injunctive relief preventing further misuse of the Marks and Copyrights.

## **FACTUAL BACKGROUND**

*Plaintiff and The Lil Baby Brand*

38.     Plaintiff owns and controls valuable intellectual property rights associated with the commercial brand, identity, and likeness of the artist professionally known as Lil Baby, a globally recognized recording artist and public figure with a substantial national and international fan base.

39.     Over a period of years, Plaintiff has invested substantial time, effort, and financial resources in developing, promoting, and commercializing the Marks, including through marketing campaigns, strategic partnerships, product development, and brand-driven consumer engagement initiatives.

40.     Plaintiff's intellectual property portfolio includes trademarks, copyrights, brand identifiers, logos, trade dress, marketing assets, and other

**COMPLAINT**

commercial indicia associated with the Lil Baby brand, including but not limited to WHAM!, SAVAGE PATCH!, and GOON BERRIES!.

41. Plaintiff uses the Marks in interstate commerce in connection with consumer products, branded merchandise, licensing arrangements, promotional collaborations, and commercial ventures, including those within the hemp and lifestyle product markets.

42. Through extensive promotion, media exposure, commercial success, and widespread consumer recognition, the Marks have come to identify a single source, Plaintiff, and products authorized, endorsed, or affiliated with Plaintiff and the Lil Baby brand.

43. Lil Baby is a highly successful recording artist whose music has achieved widespread commercial success, including multi-platinum records, global streaming success, and significant cultural influence.

44. Among Lil Baby's most prominent works is the album WHAM ("Who Hard as Me"), which achieved substantial commercial success, including over 119,000,000 on-demand streams in the United States, more than 100,000 units sold in its first week, and a No. 1 debut on the Billboard 200 chart in 2025.

45. As a result of his success, the WHAM brand has become widely recognized and is closely associated with Lil Baby's identity, persona, and Plaintiff's intellectual property rights.

46. As a direct result of Plaintiff's efforts, the Marks have acquired substantial goodwill and commercial value and are widely recognized by consumers as identifying products associated with Lil Baby and authorized by Plaintiff.

**COMPLAINT**

*The Marketing Joint Venture Agreement*

47.    In or about October 2024, Plaintiff entered into a Marketing Joint Venture Agreement (the "Agreement") with Defendant Bay Smokes LLC.

48.    The Agreement granted Defendants a limited, conditional, and revocable license to use certain of Plaintiff's Marks solely in connection with the marketing and sale of lawful hemp-derived products that complied with all applicable federal and state laws.

49.    The Agreement imposed strict and material obligations on Defendants, including, but not limited to:

  a.  Defendants were expressly prohibited from marketing or selling illegal cannabis products that fall outside the federal definition of hemp under 7 U.S.C. §16390(1);

  b.  Defendants were required to obtain Plaintiff's prior approval before using the Licensed Property in any advertising, marketing, or promotional materials, as expressly required by the Agreement's provisions governing marketing and promotion of Licensed Products;

  c.  Defendants were required to maintain strict quality-control standards, including compliance with agreed Specifications, adherence to Good Manufacturing Practices, and mandatory product testing prior to distribution, with any failure to meet such standards constituting a material breach;

  d.  Defendants were required to keep, maintain, and preserve complete and accurate books, records, and accounts covering all transactions and activities relating to Licensed Products, including financial data;

e.  Defendants were required to provide Plaintiff with detailed and timely reports of all sales data, inventory, testing results, and quality-control issues, both on a periodic basis and upon request (;

f.  Defendants were required to permit Plaintiff to inspect facilities, review operations, and audit records relating to the manufacture, distribution, and sale of Licensed Products; and

g.  Defendants were required to timely pay all compensation owed to Plaintiff under the Agreement, including agreed revenue shares and any applicable reimbursements, with interest accruing on late payments.

50.  These obligations were material terms of the Agreement and were essential to Plaintiff's ability to maintain control over its intellectual property, brand integrity, and commercial reputation.

*Defendants' Unlawful Cannabis Sales and Concealment Scheme*

51.  Under the Agreement, Defendants were authorized to sell only lawful hemp-derived products. Defendants were expressly prohibited from selling illegal cannabis products that exceeded legal THC limits or otherwise violated federal or state law.

52.  Plaintiff subsequently discovered that Defendants were marketing and selling unlawful cannabis products through their website located at https://baysmokes.com (the "**Website**") using Plaintiff's Marks and Lil Baby's name and identity.

53.  These products included cannabis goods that exceeded lawful THC limits and therefore did not qualify as hemp under federal law, rendering such sales illegal and outside the scope of the Agreement.

**COMPLAINT**

54. Defendants knowingly distribute and sell cannabis under Plaintiffs Marks. For example, in a May 3, 2025 interview on the podcase "No Jumper", Defendant Goodall admitted that Defendant Bay Smokes was "selling the same product" as the California medical and recreational systems, but that Bay Smokes was able to sell a fresher and better product because Bay Smokes does not follow the rules and regulations required by California.

55. On the same podcast Mr. Goodall claimed that Bay Smokes does the same tests required by California law but avoids having to meet the same restrictions.

56. When asked by host Adam Grandmaison, "When you say the same stuff, what is the actual technical difference?" Goodall doubled down and clarified that "like the genetics, there is no technical difference."

57. To verify Defendants' misconduct, Plaintiff conducted an independent investigation and made a purchase from Defendant Bay Smokes website on October 13, 2025. The total purchase price for the purported hemp product was $71.94.

58. The Product arrived by mail from North Carolina to Los Angeles, California. Plaintiff immediately had the purchased products tested by a certified laboratory. The lab tests confirmed that Defendants were marketing and selling unauthorized cannabis products under Plaintiff's brands in direct violation of the Agreement and applicable law.

59. Laboratory testing revealed that a product marketed by Defendants under Plaintiff's Mark WHAM, "THCA Flower Gelato 45", failed microbial safety testing and contained over 22% of total THC and over 0.3% of delta9-THC

60. Further, Defendants failed to disclose or report the sale of this cannabis product to Plaintiff and omitted the transaction from all accounting and reporting as required under the Agreement.

**COMPLAINT**

61. Critically, the transaction did not appear in the real-time sales reporting system that Defendants represented would provide Plaintiff with full visibility into all sales involving the Marks.

62. Because Plaintiff was unable to identify the transaction through the real-time reporting system, it is more likely than not that Defendants have engaged in a broader pattern of concealing sales involving products bearing the Marks.

63. This pattern of conduct demonstrates that Defendants have intentionally failed to report revenues generated from such sales and have manipulated, withheld, or omitted accounting data relating to both unauthorized cannabis sales and authorized product sales.

64. Plaintiff further believes that Defendants' concealment extends beyond isolated transactions and reflects a systematic practice of underreporting or hiding sales to avoid contractual payment obligations.

65. As a direct result of Defendants' concealment of sales and failure to provide accurate reporting, Plaintiff has been deprived of revenues owed under the Agreement.

66. The relevant sales records, financial data, and transactional information are within Defendants' exclusive possession, custody, and control, and Plaintiff is entitled to full accounting.

*Violations of Federal and California Cannabis Laws*

67. Defendants' conduct violates both federal law governing controlled substances and interstate commerce, as well as California's comprehensive statutory and regulatory framework governing the manufacture, testing, and sale of cannabis products.

68. Under the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801 et seq., marijuana, defined as cannabis containing more than 0.3% delta-9

14
**COMPLAINT**

tetrahydrocannabinol on a dry weight basis, remains classified as a Schedule I controlled substance.

69.    Pursuant to 21 U.S.C. § 841(a)(1), it is unlawful to manufacture, distribute, dispense, or possess with intent to distribute marijuana.

70.    The use of interstate commerce, including online sales platforms, electronic payment systems, and shipment of products across state lines, to distribute marijuana constitutes unlawful trafficking in controlled substances under federal law.

71.    Defendants marketed and sold cannabis products through their website and online platforms to consumers across state lines, thereby engaging in interstate commerce involving products that are unlawful under federal law.

72.    The cannabis products sold by Defendants which was tested exceeded the federal definition of lawful hemp under 7 U.S.C. § 16390(1) and therefore constitute marijuana under federal law.

73.    As such, Defendants' manufacture, marketing, and distribution of these products through interstate commerce constitute violations of 21 U.S.C. § 841 and related provisions of the CSA.

74.    Defendants' conduct further implicates the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 et seq., which prohibits the introduction into interstate commerce of adulterated or unsafe products.

75.    Cannabis products contaminated with harmful microbial organisms constitute adulterated products within the meaning of federal law and may not lawfully be introduced into interstate commerce.

*California Cannabis Testing and Safety Violations*

**COMPLAINT**

76. Defendants' conduct also violates California's Medicinal and Adult-Use Cannabis Regulation and Safety Act ("MAUCRSA"), which strictly regulates the testing, manufacture, and sale of cannabis products within the State of California.

77. California Business and Professions Code § 26100(a) requires that all cannabis goods be tested by a licensed independent laboratory prior to sale.

78. Section 26100(c) further prohibits the sale, transfer, or distribution of any cannabis product that has not passed all required safety testing standards.

79. These statutory requirements are implemented through regulations promulgated by the California Department of Cannabis Control, including Title 4 of the California Code of Regulations.

80. Pursuant to 4 CCR § 15705, cannabis products must be sampled and tested in accordance with strict chain-of-custody procedures to ensure product integrity.

81. Under 4 CCR § 15714, cannabis products must undergo comprehensive laboratory testing, including testing for microbial impurities, mycotoxins, pesticides, heavy metals, and other contaminants.

82. Cannabis products that fail any required safety test are deemed unsafe and may not be sold or distributed to consumers under any circumstances.

83. Defendants violated these provisions by manufacturing, marketing, and distributing cannabis products bearing Plaintiff's Marks that failed microbial safety testing, above permissible amounts of THC, and contained unsafe levels of contamination.

84. The sale of contaminated cannabis products constitutes unlawful conduct under California law and poses a direct threat to public health and safety.

**COMPLAINT**

*Unlawful Conduct and Continuing Violations*

85.     Defendants' conduct is not isolated but constitutes a continuing course of unlawful activity involving the interstate sale of illegal cannabis products and the distribution of unsafe, contaminated goods.

86.     By engaging in the unlawful manufacture, distribution, and sale of cannabis products in violation of both federal and California law, Defendants have engaged in unlawful, unfair, and fraudulent business practices.

87.     Defendants' actions therefore support Plaintiff's claims for unfair competition, false advertising, and injunctive relief, and warrant the imposition of all available remedies under law.

*Contaminated Products*

88.     Defendants distributed cannabis products bearing Plaintiff's Marks and Copyrights that failed mandatory microbial safety testing.

89.     Laboratory testing conducted by Plaintiff, as documented in a Certificate of Analysis dated October 29, 2025, revealed that a product marketed by Defendants under Plaintiff's Marks, "THCA Flower Gelato 45", failed microbial safety testing.

90.     The Certificate of Analysis reported the presence of harmful microbial contamination, including:

  a.  Enterobacteriaceae detected in 1 gram (FAIL);

  b.  Coliforms/E. coli detected in 1 gram (FAIL); and

  c.  Total yeast and mold detected at levels too numerous to count (FAIL).

91.     Based on the lab tests, Defendants distributed cannabis products that were unsafe for human consumption and failed mandatory regulatory testing requirements.

**COMPLAINT**

92.    By distributing contaminated products bearing Plaintiff's Marks, Defendants deprived Plaintiff of its right to control the nature and quality of goods associated with its brand.

93.    Defendants' conduct not only breached the Agreement but also exposed consumers to unsafe products falsely associated with Plaintiff and the Lil Baby brand.

*False Claims of Ownership and Association with Adult Content*

94.    Plaintiff has also discovered that Defendants have repeatedly made false public statements claiming that Bay Smokes owns or controls the intellectual property rights associated with the Lil Baby brand and Plaintiff's Marks.

95.    These false statements have been disseminated through Defendants' Website, social media platforms, promotional materials, and digital marketing channels.

96.    These representations are false. Plaintiff, not Defendants, owns and controls the Marks and all associated intellectual property rights.

97.    Plaintiff further discovered that Defendants promoted the Bay Smokes brand in connection with explicit erotic content, including erotic videos distributed through social media and online platforms.

98.    In multiple instances, Defendants promoted Bay Smokes in erotic videos while simultaneously claiming Bay Smokes and Defendant Goodall owned or controlled Plaintiff's Marks and Copyrights and the Lil Baby brand.

99.    By associating Plaintiff's Marks with explicit erotic content, Defendants created a false and misleading impression that Plaintiff's brands are affiliated with or connected to such content being used in conjunction with plaintiff's Marks and Copyright.

100. This association is highly damaging to Plaintiff's reputation and dilutes the value and distinctiveness of the Marks.

101. Defendants' conduct constitutes trademark tarnishment, false designation of origin, and false endorsement under the Lanham Act.

102. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered substantial financial loss, reputational harm, and damage to the goodwill associated with its brands.

103. As a direct result of Defendant's actions, Plaintiff has suffered financial losses, reputational harm, and damage to the goodwill associated with its brands.

## FIRST CAUSE OF ACTION

### Trademark Infringement – 15 U.S.C. §1114.

### (Lil Baby)

(Against All Defendants)

104. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

105. Plaintiff has the right to market and commercialize valuable trademark rights associated with the LIL' BABY name and brand, which identify the internationally recognized recording artist and the commercial activities associated with that brand.

106. Through extensive music sales, streaming, merchandising, brand collaborations, and media exposure, the LIL' BABY mark has achieved widespread fame, recognition, and substantial goodwill.

107. Defendants had actual knowledge of Plaintiff's rights in the LIL' BABY name and brand through their direct dealings with Plaintiff, the Agreement, and their use of Lil' Baby's identity in connection with Bay Smokes products.

COMPLAINT

108. Despite that knowledge, Defendants intentionally usurped the LIL' BABY name and brand by using Lil Baby's identity, persona, and goodwill as if Defendants owned, controlled, or were authorized to exploit them in the unlawful manner they conducted business, to wit the sale of unlawful cannabis in California and nationwide.

109. Defendants used the LIL' BABY name and brand in connection with the advertising, marketing, promotion, and sale of illegal cannabis products without Plaintiff's authorization and outside the scope of any limited rights granted under the Agreement.

110. Defendants also falsely claimed that Bay Smokes owned or controlled the Lil' Baby brand and associated intellectual property.

111. Defendants' conduct was designed to monetize on Lil' Baby's fame and to divert consumer attention, sales, and goodwill by misappropriating Plaintiff's brand identity for Defendants' own financial benefit.

112. Defendants' unauthorized use of the LIL' BABY mark in connection with unlawful cannabis sales is likely to cause, and has caused, confusion, mistake, and deception among consumers as to the source, sponsorship, affiliation, or approval of Defendants' products.

113. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered substantial damages, including reputational harm, loss of goodwill, loss of control over its brand, diversion of sales, and loss of licensing value.

114. Defendants' actions were willful, intentional, and undertaken in bad faith, with full knowledge of Plaintiff's rights.

115. Plaintiff is therefore entitled to all relief available under 15 U.S.C. §§ 1114 and 1117, including injunctive relief, damages, disgorgement of profits, enhanced damages where permitted, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION

### Trademark Infringement – WHAM

### 15 U.S.C. §1114.

### (Against All Defendants)

116.    Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

117.    Plaintiff owns and controls valid and protectable trademark rights in the WHAM! mark.

118.    Plaintiff also maintains Trademark registration with the USPTO under serial number 97286123 and USPTO serial number 98156754.

119.    The WHAM! mark has acquired substantial fame, distinctiveness, and goodwill through Plaintiff's extensive use and promotion, including the commercial success of Lil Baby's album WHAM, which achieved more than 119,000,000 on-demand streams in the United States, sold more than 100,000 units in its first week, and debuted at No. 1 on the Billboard 200 chart in 2025.

120.    Consumers have come to associate the WHAM! mark with Lil Baby, Plaintiff, and products, promotions, and commercial activities authorized by Plaintiff.

121.    Defendants had actual knowledge of Plaintiff's ownership and rights in the WHAM! mark through the Agreement and through their direct business relationship with Plaintiff.

122.    Notwithstanding that knowledge, Defendants usurped the WHAM! name and brand by using it as though it belonged to Bay Smokes and by marketing products in a manner falsely suggesting that Defendants owned or controlled the WHAM mark.

123. Defendants used the WHAM mark in connection with the marketing, promotion, and sale of illegal cannabis products appropriated and held out as their own and outside the scope of the limited license granted under the Agreement.

124. Defendants also falsely represented to consumers and online audiences that Bay Smokes owned or controlled the WHAM! brand, thereby trading on the goodwill Plaintiff built in the mark.

125. Defendants' use of the WHAM mark in connection with unlawful cannabis products falsely suggests that such products are affiliated with, endorsed by, sponsored by, or approved by Plaintiff and the Lil Baby brand.

126. Defendants further damaged the goodwill associated with the WHAM! mark by associating it with concealed sales, unauthorized cannabis activity, and contaminated products.

127. Defendants' conduct is likely to cause, and has caused, consumer confusion, mistake, and deception as to the source, sponsorship, and approval of Defendants' products.

128. As a direct and proximate result of Defendants' infringement of the WHAM! mark, Plaintiff has suffered substantial damages, including reputational injury, lost revenues, loss of control over the mark, and damage to brand goodwill.

129. Defendants' conduct was willful, deliberate, and undertaken in conscious disregard of Plaintiff's rights.

130. Plaintiff is therefore entitled to all remedies available under 15 U.S.C. §§ 1114 and 1117.

### THIRD CAUSE OF ACTION
**Trademark Infringement – SAVAGE PATCH!**
15 U.S.C. §1114
(Against All Defendants)

131. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

22
**COMPLAINT**

132. Plaintiff owns and controls valid and protectable trademark rights in the SAVAGE PATCH! mark.

133. The SAVAGE PATCH! mark is distinctive and has acquired substantial goodwill and consumer recognition through Plaintiff's promotion, marketing, and commercial use in connection with products and commercial activities.

134. Defendants had actual knowledge of Plaintiff's ownership of the SAVAGE PATCH! mark because Defendants entered into the Agreement, which acknowledged Plaintiff's ownership of the Marks and granted only a limited, conditional, and revocable license.

135. Defendants exceeded the scope of the Agreement by marketing, advertising, promoting, and selling illegal cannabis products bearing the SAVAGE PATCH! mark without authorization and outside the scope of lawful hemp-derived products contemplated by the Agreement.

136. Defendants, upon information and belief, further concealed sales involving products bearing the SAVAGE PATCH! mark and failed to report revenues generated from those sales, thereby using the mark while withholding the financial information required under the parties' contractual relationship.

137. Defendants' unauthorized use of the SAVAGE PATCH! mark in connection with unlawful cannabis products was likely to cause, and did cause, confusion among consumers regarding the source, sponsorship, or approval of those products.

138. Defendants' distribution of contaminated and unsafe products bearing the SAVAGE PATCH! mark also deprived Plaintiff of its right to control the quality and reputation of goods associated with that mark.

139. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including lost revenue, reputational harm, and loss of goodwill associated with the SAVAGE PATCH! mark.

140. Defendants' actions were willful, intentional, and undertaken with knowledge of Plaintiff's trademark rights.

141. Plaintiff is therefore entitled to injunctive relief, damages, disgorgement of profits, attorneys' fees, and all other relief available under 15 U.S.C. §§ 1114 and 1117.

### FOURTH CAUSE OF ACTION
**Trademark Infringement – GOON BERRIES!**
15 U.S.C. §1114
(Against All Defendants)

142. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

143. Plaintiff owns and controls valid and protectable trademark rights in the GOON BERRIES! mark.

144. Plaintiff has registered these marks with the USPTO under registration serial number 97573163 and serial number 97574068.

145. The GOON BERRIES! mark is distinctive and has acquired substantial goodwill and consumer recognition through Plaintiff's promotion, marketing, and commercial use in connection with products and commercial activities.

146. Defendants had actual knowledge of Plaintiff's rights in the GOON BERRIES! mark through the Agreement and through their direct business dealings with Plaintiff.

147. Defendants marketed, promoted, and sold illegal cannabis products using the GOON BERRIES! mark without authorization and outside the scope of the limited license granted under the Agreement.

24
**COMPLAINT**

148.   Defendants' use of the GOON BERRIES! mark is likely to cause, and has caused, confusion among consumers as to the source, sponsorship, affiliation, or approval of the products bearing that mark.

149.   Defendants also deprived Plaintiff of its right to control the quality and nature of products associated with the GOON BERRIES! brand by using the mark on unauthorized and contaminated cannabis products.

150.   By distributing unsafe and contaminated products under the GOON BERRIES! mark, Defendants further damaged the reputation and goodwill associated with Plaintiff's trademark.

151.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including loss of revenue, loss of goodwill, reputational harm, and diminished brand value.

152.   Defendants' actions were willful and undertaken with knowledge of Plaintiff's rights.

153.   Plaintiff is therefore entitled to all remedies available under 15 U.S.C. §§ 1114 and 1117.

## FIFTH CAUSE OF ACTION
### Trademark Infringement – THE HOLDING COMPANY
15 U.S.C. §1114
(Against All Defendants)

154.   Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

155.   Plaintiff owns and controls valid and protectable trademark rights in the THE HOLDING COMPANY mark.

156. THE HOLDING COMPANY mark is distinctive and has acquired substantial goodwill and consumer recognition through Plaintiff's promotion, marketing, and commercial use in connection with products and commercial activities.

157. Plaintiff has registered this mark with the USPTO under registration serial number 97096249.

158. Defendants had actual knowledge of Plaintiff's ownership of the THE HOLDING COMPANY mark because Defendants entered into the Agreement, which acknowledged Plaintiff's ownership of the Marks and granted only a limited, conditional, and revocable license.

159. Defendants exceeded the scope of the Agreement by marketing, advertising, promoting, and selling illegal cannabis products bearing the THE HOLDING COMPANY mark without authorization and outside the scope of lawful hemp-derived products contemplated by the Agreement.

160. Defendants, upon information and belief, further concealed sales involving products bearing the THE HOLDING COMPANY mark and failed to report revenues generated from those sales, thereby using the mark while withholding the financial information required under the parties' contractual relationship.

161. Defendants' unauthorized use of the THE HOLDING COMPANY mark in connection with unlawful cannabis products was likely to cause, and did cause, confusion among consumers regarding the source, sponsorship, or approval of those products.

162. Defendants' distribution of contaminated and unsafe products bearing the THE HOLDING COMPANY mark also deprived Plaintiff of its right to control the quality and reputation of goods associated with that mark.

163. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including lost revenue, reputational harm, and loss of goodwill associated with the THE HOLDING COMPANY mark.

164. Defendants' actions were willful, intentional, and undertaken with knowledge of Plaintiff's trademark rights.

165. Plaintiff is therefore entitled to injunctive relief, damages, disgorgement of profits, attorneys' fees, and all other relief available under 15 U.S.C. §§ 1114 and 1117.

## SIXTH CAUSE OF ACTION
### False Designation of Origin and False Endorsement
15 U.S.C. §1125(a))

(Against All Defendants)

166. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

167. Defendants used Plaintiff's Marks and the name, image, identity, and likeness associated with the artist professionally known as Lil Baby in connection with, *inter alia*, the marketing, promotion, and sale of illegal cannabis products.

168. Defendants' website, promotional materials, social media content, and related advertising falsely suggested that Plaintiff and Lil Baby endorsed, sponsored, approved, or were otherwise affiliated with Defendants' sale of illegal cannabis products.

169. Defendants also publicly claimed that Bay Smokes owned or controlled the Lil Baby brand and Plaintiff's trademarks.

170. By claiming ownership of Plaintiff's brands while simultaneously promoting products under those brands, Defendants usurped Plaintiff's commercial identity and falsely presented themselves to the public as the rightful source or authorized controller of the Marks.

171. These statements and representations were false and misleading and were likely to deceive consumers into believing that Defendants' products were officially associated with, endorsed by, or authorized by, Plaintiff and the Lil Baby brand.

172. Defendants' conduct therefore created a false and misleading impression regarding the source, sponsorship, affiliation, and approval of Defendants' products.

173. By creating the false impression of endorsement, ownership, or affiliation, Defendants unfairly exploited the goodwill associated with Plaintiff's Marks and the Lil Baby brand for Defendants' own commercial benefit.

**COMPLAINT**

174. Defendants' conduct constitutes false designation of origin and false endorsement in violation of 15 U.S.C. § 1125(a).

175. As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, loss of goodwill, reputational injury, and irreparable harm.

176. Plaintiff is entitled to preliminary and permanent injunctive relief, damages, disgorgement of profits, attorneys' fees where permitted, and all other relief available under the Lanham Act.

## SEVENTH CAUSE OF ACTION

### Trademark Dilution by Tarnishment

15 U.S.C. §1125(c)

(Against All Defendants)

177. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

178. Plaintiff's Marks, including in particular the WHAM! mark and the marks associated with the Lil Baby brand, are distinctive and widely recognized by consumers as identifying products and commercial activities associated with Plaintiff and Lil Baby.

179. Through extensive promotion, commercial success, media exposure, and continuous use in commerce, Plaintiff's Marks have achieved significant recognition, commercial value, and goodwill.

180. Defendants not only used Plaintiff's Marks without authorization, but usurped those marks by falsely claiming ownership or control of them while using them to market and sell unlawful cannabis products.

**COMPLAINT**

181.   Defendants also associated the Bay Smokes brand and Plaintiff's Marks with explicit adult content distributed through social media and online platforms while simultaneously claiming ownership or control over Plaintiff's trademarks.

182.   Defendants further associated Plaintiff's Marks with unauthorized illegal cannabis sales, concealed sales, contaminated products, and unlawful conduct, thereby creating a harmful and negative association with Plaintiff's brands.

183.   The association of Plaintiff's Marks with explicit adult content and unsafe cannabis products tarnishes the reputation and goodwill associated with the Lil Baby brand and diminishes the distinctiveness and value of the Marks.

184.   Defendants' conduct therefore constitutes dilution by tarnishment within the meaning of 15 U.S.C. § 1125(c).

185.   Unless enjoined by this Court, Defendants will continue to engage in acts that dilute, tarnish, and impair the value and reputation of Plaintiff's Marks.

186.   Plaintiff is therefore entitled to injunctive relief and all other remedies permitted by law.

**EIGTH CAUSE OF ACTION**
Copyright Infringement – 17 U.S.C. §§ 501, *et seq*.
**(SAVAGE PATCH Copyright)**
(Direct, Contributory, Vicarious)
(Against All Defendants)

187.   Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

188.   Plaintiff is the sole and rightful owner of the 2-D artwork and copyright registration, effective as early as May 1, 2023, United States Copyright Registration No. VA 2-350-438 ("**SAVAGE PATCH Copyright**").

189.   Without Plaintiff's knowledge, permission, or authorization, Defendants sold cannabis products using the SAVAGE PATCH Copyright.

30
**COMPLAINT**

190.    Defendants produced, reproduced, prepared derivative works, distributed, and publicly displayed Plaintiff's protected works or derivatives of Plaintiff's protected works without its consent, authorization, or compensation. Defendants' acts violate Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Plaintiff's exclusive rights to produce, reproduce, and distribute copies of its work, to create derivative works, and to publicly display its copyrighted work.

191.    Defendants' infringement has been undertaken knowingly, and with intent to financially gain from Plaintiff's protected copyrighted works.

192.    Defendants also failed to supervise people within their control to prevent infringement, and they did so with the intent to further their financial interest in the infringement of Plaintiff's copyrighted works. Accordingly, Defendants have directly, contributorily, and vicariously infringed Plaintiff's copyrighted works.

193.    Defendants' actions were and are intentional, willful, wanton, and performed in disregard of Plaintiff's rights.

194.    Defendants' conduct also has caused irreparable and incalculable harm and injuries to Plaintiff, and, unless enjoined, will cause further irreparable and incalculable injury, for which Plaintiff has no adequate remedy at law.

195.    Plaintiff is entitled to the relief provided by 17 U.S.C. §§ 502-505, including but not limited to injunctive relief, an order for impounding and destruction of all of Defendants' infringing copies and/or derivative works, compensatory damages (including, but not limited to actual damages and/or Defendants' profits), statutory damages, punitive damages, and attorneys' fees in amounts to be determined at trial.

## NINTH CAUSE OF ACTION
Copyright Infringement – 17 U.S.C. §§ 501, *et seq.*
**(WHAM! Copyright)**
(Direct, Contributory, Vicarious)
(Against All Defendants)

196.   Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

197.   Plaintiff is the sole and rightful owner of the 2-D artwork and copyright registration, effective as early as May 23, 2023, United States Copyright Registration No. VA 2-350-456 ("**WHAM! Copyright**").

198.   Without Plaintiff's knowledge, permission, or authorization, Defendants sold cannabis products using the WHAM! Copyright.

199.   Upon information and belief, Defendants produced, reproduced, prepared derivative works, distributed, and publicly displayed Plaintiff's protected works or derivatives of Plaintiff's protected works without its consent, authorization, or compensation. Defendants' acts violate Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Plaintiff's exclusive rights to produce, reproduce, and distribute copies of its work, to create derivative works, and to publicly display its copyrighted work.

200.   Defendants' infringement has been undertaken knowingly, and with intent to financially gain from Plaintiff's protected copyrighted works. Defendants failed to supervise people within their control to prevent infringement, and they did so with the intent to further their financial interest in the infringement of Plaintiff's copyrighted works. Accordingly, Defendants have directly, contributorily, and vicariously infringed Plaintiff's copyrighted works.

201.   Upon information and belief, Defendants' actions were and are intentional, willful, wanton, and performed in disregard of Plaintiff's rights.

32
**COMPLAINT**

202. Defendants' conduct also has caused irreparable and incalculable harm and injuries to Plaintiff, and, unless enjoined, will cause further irreparable and incalculable injury, for which Plaintiff has no adequate remedy at law.

203. Plaintiff is entitled to the relief provided by 17 U.S.C. §§ 502-505, including but not limited to injunctive relief, an order for impounding and destruction of all of Defendants' infringing copies and/or derivative works, compensatory damages (including, but not limited to actual damages and/or Defendants' profits), statutory damages, punitive damages, and attorneys' fees in amounts to be determined at trial.

**TENTH CAUSE OF ACTION**
Copyright Infringement – 17 U.S.C. §§ 501, *et seq*.
**(GOON BERRIES Copyright)**
(Direct, Contributory, Vicarious)
(Against All Defendants)

204. Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

205. Plaintiff is the sole and rightful owner of the 2-D artwork and copyright registration, effective as early as May 1, 2023, United States Copyright Registration No. VA 2-350-434 ("**GOON BERRIES Copyright**").

206. Without Plaintiff's knowledge, permission, or authorization, Defendants sold cannabis products using the GOON BERRIES Copyright.

207. Upon information and belief, Defendants produced, reproduced, prepared derivative works, distributed, and publicly displayed Plaintiff's protected works or derivatives of Plaintiff's protected works without its consent, authorization, or compensation. Defendants' acts violate Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Plaintiff's exclusive rights to produce, reproduce, and distribute copies of its work, to create derivative works, and to publicly display its copyrighted work.

208. Defendants' infringement has been undertaken knowingly, and with intent to financially gain from Plaintiff's protected copyrighted works. Defendants failed to supervise people within their control to prevent infringement, and they did so with the intent to further their financial interest in the infringement of Plaintiff's copyrighted works. Accordingly, Defendants have directly, contributorily, and vicariously infringed Plaintiff's copyrighted works.

209. Upon information and belief, Defendants' actions were and are intentional, willful, wanton, and performed in disregard of Plaintiff's rights.

210. Defendants' conduct also has caused irreparable and incalculable harm and injuries to Plaintiff, and, unless enjoined, will cause further irreparable and incalculable injury, for which Plaintiff has no adequate remedy at law.

211. Plaintiff is entitled to the relief provided by 17 U.S.C. §§ 502-505, including but not limited to injunctive relief, an order for impounding and destruction of all of Defendants' infringing copies and/or derivative works, compensatory damages (including, but not limited to actual damages and/or Defendants' profits), statutory damages, punitive damages, and attorneys' fees in amounts to be determined at trial.

## ELEVENTH CAUSE OF ACTION

Breach of Written Contract

(Against Defendant Bay Smokes LLC)

212. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

213. Plaintiff and Defendant Bay Smokes entered into the **Marketing Joint Venture Agreement** in or about October 2024.

214. Plaintiff performed all conditions, covenants, and obligations required under the Agreement or has been excused from performance.

**COMPLAINT**

215. The Agreement imposed clear, binding, and material obligations on Defendants, each of which was essential to Plaintiff's ability to control its intellectual property, protect its brand, and receive the benefit of the parties' bargain.

216. Under the Agreement, Defendants were required to obtain Plaintiff's prior approval before using the Licensed Property in any advertising, marketing, or promotional materials.

217. Defendants breached this obligation by marketing, promoting, and selling products bearing Plaintiff's Marks and Lil Baby's name and likeness without Plaintiff's knowledge, consent, or approval.

218. This unauthorized use included the promotion of cannabis products that fell outside the scope of the Agreement and falsely suggested endorsement or affiliation by Plaintiff.

*Failure to Maintain Quality-Control Standards*

219. The Agreement required Defendants to maintain strict quality-control standards, including compliance with product Specifications, adherence to Good Manufacturing Practices, and required product testing prior to distribution.

220. Defendants materially breached these obligations by manufacturing, marketing, and distributing cannabis products that failed microbial safety testing and did not meet required safety or regulatory standards.

221. By distributing contaminated and unsafe products bearing Plaintiff's Marks, Defendants deprived Plaintiff of its fundamental contractual right to control the nature and quality of goods associated with its brand.

*Failure to Maintain Accurate Books and Records*

222. The Agreement required Defendants to maintain complete, accurate, and transparent books, records, and accounts covering all transactions involving products bearing the Marks.

223. Defendants breached this obligation by failing to maintain accurate records of sales and by omitting transactions from their accounting systems.

224. Defendants further manipulated, withheld, or failed to record sales data relating to products bearing Plaintiff's Marks.

225. Failure to Provide Required Sales Reporting

226. The Agreement required Defendants to provide Plaintiff with full, accurate, and timely reporting of all sales, revenues, inventory, and product-related data.

227. Defendants breached this obligation by failing to report sales involving products bearing the Marks, including confirmed transactions.

228. As alleged herein, Plaintiff identified at least one verified transaction that was not reported and did not appear in Defendants' reporting systems.

229. This failure to report deprived Plaintiff of transparency into Defendants' operations and prevented Plaintiff from verifying revenues owed under the Agreement.

*Concealment of Sales and Revenue*

230. Defendants' failure to report sales was not inadvertent but part of a broader pattern of concealment.

231. Because Plaintiff was unable to verify sales through the reporting mechanisms, Defendants represented would provide visibility into transactions, Plaintiff has reason to believe that Defendants have engaged in widespread, undisclosed sales activity.

232. Defendants intentionally concealed revenues generated from both unauthorized cannabis sales and authorized products to avoid contractual payment obligations.

*Failure to Permit Meaningful Oversight and Audit*

233.   The Agreement granted Plaintiff the right to inspect, audit, and review Defendants' records, facilities, and operations relating to Licensed Products.

234.   Defendants breached this obligation by failing to provide accurate and complete information necessary for Plaintiff to meaningfully exercise its audit and oversight rights.

235.   By concealing sales and withholding accurate records, Defendants effectively obstructed Plaintiff's contractual right to monitor performance under the Agreement.

*Failure to Pay Amounts Owed*

236.   The Agreement required Defendants to pay Plaintiff all compensation owed, including revenue shares and reimbursement of expenses.

237.   Defendants breached this obligation by failing to remit payments owed to Plaintiff in connection with sales involving the Marks.

238.   As a direct result of Defendants' concealment of sales and failure to report revenues, Plaintiff has been deprived of substantial amounts due under the Agreement.

*Sale of Unauthorized and Illegal Products Outside Scope of Agreement*

239.   The Agreement limited Defendants' license to the sale of lawful hemp-derived products.

240.   Defendants materially breached the Agreement by marketing and selling cannabis products that fall outside the definition of lawful hemp, thereby exceeding the scope of the license granted.

**COMPLAINT**

241. These unauthorized sales were conducted using Plaintiff's Marks and Lil Baby's identity, further compounding the breach.

*Resulting Harm*

242. Each of the foregoing breaches constitutes a material breach of the Agreement.

243. Defendants' breaches have deprived Plaintiff of the benefit of the bargain and have undermined the fundamental purpose of the Agreement.

244. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered substantial damages, including but not limited to:

- lost revenues and unpaid contractual amounts;

- loss of control over its intellectual property;

- reputational harm and damage to brand goodwill;

- dilution and devaluation of the Marks; and

- costs associated with investigating and addressing Defendants' misconduct.

245. Plaintiff is entitled to recover all damages caused by Defendants' breaches, together with interest, attorneys' fees where permitted, and all other relief available under law.

## TWELEFTH CAUSE OF ACTION

### Unfair Competition

(Cal. Bus. & Prof. Code §17200)

(Against All Defendants)

246. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

**COMPLAINT**

247. Defendants have engaged in unlawful, unfair, and fraudulent business practices within the meaning of California Business and Professions Code § 17200.

248. Defendants' conduct is unlawful because it violates, among other laws, the Lanham Act, California cannabis safety and testing laws, the Controlled Substances Act, the Federal Food, Drug, and Cosmetic Act, and the parties' contractual obligations.

249. Defendants' conduct is unfair because it allows Defendants to profit from Plaintiff's intellectual property and goodwill while concealing sales, selling unauthorized and unsafe products, misrepresenting ownership of Plaintiff's Marks, and competing through unlawful means.

250. Defendants' conduct is fraudulent because it is likely to deceive members of the public into believing that Defendants' products are affiliated with, endorsed by, owned by, or authorized by Plaintiff and Lil Baby.

251. By usurping Plaintiff's and Lil Baby's names, marks, and brand identity and then using those usurped identities to promote and sell unlawful cannabis products, Defendants obtained an unfair competitive advantage and diverted commercial value that belonged to Plaintiff.

252. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff has suffered injury in fact and has lost money, property, revenues, business opportunities, and control over its brand reputation.

253. Plaintiff is entitled to restitution, injunctive relief, and all other relief available under California Business and Professions Code § 17203

**COMPLAINT**

**THIRTEENTH CAUSE OF ACTION**

**FALSE ADVERTISING**

**(Cal. Bus. & Prof. Code §17500)**

254.   Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

255.   California Business and Professions Code § 17500 prohibits any person or entity, with the intent to induce members of the public to enter into obligations or purchase goods or services, from making or disseminating advertising statements that are untrue or misleading and that are known, or by the exercise of reasonable care should be known, to be false or misleading.

256.   Defendants made numerous false and misleading statements in advertising and promotional materials representing that Bay Smokes owned and controlled the Lil' Baby brand and Plaintiff's trademarks, including but not limited to WHAM!, SAVAGE PATCH!, and GOON BERRIES!.

257.   These representations were false. Plaintiff, not Defendants, owns and controls the intellectual property rights associated with the Lil Baby brand and the Marks.

258.   Defendants disseminated these false statements through Defendants' website, social media platforms, online marketing materials, promotional videos, and other digital content intended to promote Bay Smokes products.

259.   The false statements were likely to deceive reasonable consumers into believing that Defendants' illegal cannabis products were affiliated with, endorsed by, sponsored by, officially associated with, or owned by Plaintiff, Lil Baby, or Plaintiff's brands.

260.   Defendants made these statements knowingly and with the intent to induce consumers to purchase Defendants' products by capitalizing on the goodwill,

40

**COMPLAINT**

fame, and public recognition associated with Plaintiff's Marks and the Lil Baby brand.

261. In doing so, Defendants usurped Plaintiff's brand identity and presented Bay Smokes as the rightful owner or operator of Plaintiff's Marks, and related brands while simultaneously marketing unauthorized illegal cannabis products.

262. These false and misleading advertising practices diverted consumers and sales away from Plaintiff and allowed Defendants to improperly benefit from the goodwill associated with Plaintiff's Marks.

263. As a direct and proximate result of Defendants' false advertising and misleading promotional practices, Plaintiff has suffered injury to its business and property, including diversion of sales, loss of licensing revenue, reputational harm, loss of control over its brand identity, and diminution in goodwill.

264. Defendants' misconduct forms part of a deliberate scheme to misappropriate the identity, goodwill, and commercial reputation associated with the Lil Baby brand. Rather than operate within the limited hemp-product marketing license granted by Plaintiff, Defendants falsely claimed ownership of Plaintiff's brands, promoted unauthorized illegal cannabis products, concealed sales revenues, and associated Plaintiff's trademarks with explicit adult content used to promote the Bay Smokes brand.

265. Defendants' actions were designed to mislead and deceive consumers and improperly divert the commercial value and goodwill belonging to Plaintiff.

266. Plaintiff is therefore entitled to all remedies available under California Business and Professions Code § 17500, including injunctive relief and restitution.

## FOURTEENTH CAUSE OF ACTION

### Accounting

(Against All Defendants)

267. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

268. Defendants have concealed sales involving products bearing Plaintiff's Marks and have failed to disclose complete records of those sales.

269. The full amount of revenues, profits, and other benefits generated from Defendants' sales involving the Marks is presently unknown to Plaintiff and cannot be ascertained without an accounting.

270. The relevant financial records, sales records, order data, testing records, and accounting materials relating to such sales are within the exclusive possession, custody, and control of Defendants.

271. Because Defendants usurped Plaintiff's marks and used them to market and sell products while concealing transactional and revenue data, a full accounting is necessary to determine the amounts owed to Plaintiff, the revenues improperly withheld, the profits derived from Defendants' unlawful conduct, and the scope of Defendants' concealment.

272. Plaintiff is therefore entitled to a full accounting of all revenues, profits, and other benefits obtained by Defendants from the manufacture, marketing, promotion, and sale of products bearing Plaintiff's Marks and Lil Baby's name and identity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff The Holding Company LLC respectfully requests that judgment be entered in its favor and against Defendants, and that the Court grant the following relief:

COMPLAINT

A. Defendants' acts constitute trademark infringement, false designation of origin, false endorsement, and trademark dilution in violation of the Lanham Act, 15 U.S.C. §§1114, 1125(a), and 1125(c);

B. Defendant Bay Smokes LLC materially breached the Marketing Joint Venture Agreement;

C. For preliminary and permanent injunctive relief prohibiting Defendants, their officers, agents, servants, employees, and all persons acting in concert or participation with them from:

    a. Using Plaintiff's Marks or any confusingly similar marks in connection with any goods or services;

    b. Using the name, image, likeness, or identity associated with Lil Baby;

    c. Claiming ownership or control over Plaintiff's trademarks or brand assets;

    d. Marketing or selling any products using Plaintiff's Marks;

    e. Associating Plaintiff's Marks with explicit adult content or unlawful products;

D. For an order requiring Defendants to provide a full accounting of all revenues, profits, and financial benefits derived from their use of Plaintiff's Marks;

E. For disgorgement of all profits obtained through Defendants' wrongful conduct;

F. For compensatory damages in an amount to be proven at trial;

G. For enhanced damages, including treble damages, based on Defendants' willful and intentional misconduct;

**COMPLAINT**

H.   For an order requiring the seizure and destruction of all infringing products and materials;

I.   For restitution under California Business and Professions Code § 17200;

J.   For attorneys' fees and costs pursuant to 15 U.S.C. § 1117 and applicable law;

K.   For pre-judgment and post-judgment interest;

L.   For relief against Defendants jointly and severally; and

M.   For such other and further relief as the Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a jury trial as to all issues so triable.

DATED: March 31, 2026                    **ENSO LAW, L.L.P.**

*/s/ David R. Welch*
David R. Welch, Esq.
Attorneys for Plaintiff

44
**COMPLAINT**